ALBANY,
Dec. 1836.

Miller
v.
Smith's Ex'rs.

</div>

---

## MILLER *vs.* SMITH'S EXECUTORS.

At *common law*, presumption of payment after a lapse of 20 years applies as well to *judgments* as to *bonds, mortgages* and other *specialties.*[*]

In an action of debt, on judgment brought after a great lapse of time subsequent to the entry of judgment, *it was held* that, in support of a plea of *payment,* it is admissible on the part of the defendant to show that an execution was issued upon the judgment shortly after its entry, that the defendant was at the time the owner and possessor of property amply sufficient to satisfy the debt, that the plaintiff directed the officer to proceed without delay, that the officer has been dead for many years, and that the execution has not been returned to the proper office; AND FURTHER, that such facts unexplained and not rebutted by evidence on the part of the plaintiff, would warrant a jury to find in favor of the defendant—and because such evidence had been rejected a new trial was granted.

ERROR from the supreme court. This was an action of *debt* on a judgment in favor of the testator against Miller, on a bond and warrant of attorney, conditioned for the pay-

---

[*] By an act passed 3d April, 1821, in amendment of the law 'concerning judgments and executions,' it is enacted by the 5th §, "that the presumption of payment shall apply to all judgments heretofore rendered,

ment of $826,40. The bond and warrant were executed on the 19th October, 1805, and the judgment entered three days thereafter. The suit on the judgment was commenced in January term, 1833. The defendant pleaded 1: *nil debet;* 2. *nul tiel record;* and 3. *payment* to the testator on 1st January, 1806. The plaintiffs replied, denying payment. On the trial of the cause, the plaintiffs produced an exemplification of the judgment, and rested. The counsel for the defendant requested the circuit judge to charge the jury, that the *presumption of payment,* arising from lapse of time, sus-

---

or hereafter to be rendered in any court of record of this state, to wit: to judgments *heretofore rendered,* after twenty years *from the passing of this act,* and to all judgments *hereafter* to be rendered after twenty years *from the docketing such judgments,* in the same manner as such presumption applies to sealed instruments." The provision in the revised statutes on this subject is in these words: "The presumption of payment shall apply to all judgments of a court of record in this state, rendered before 3d April, 1821, and to all such judgments rendered before this chapter shall take effect as a law, in the same manner as such presumption applies to sealed instruments." 2 R. S. 301, § 46. And the next section extends the provision to judgments to be rendered *after* the revised statutes should go into operation.

In commenting upon these several provisions, the *Chancellor* considers the provision in the act of 1821 in the nature of a *statute of limitation,* and that its effect was to enlarge the time of presumption as to judgments rendered previous to 3d April, 1821, so that the presumption of payment should not apply to such judgments until 1841. He concedes that the legislature might subsequently abridge that time, *provided a reasonable time was given to plaintiffs to collect their judgments before the statutory bar or legal presumption was permitted to attach;* but he denies that an act could be *valid* and *operative* declaring that the presumption of payment should attach to a judgment which at the passage of the act had already lain dormant twenty years, and he therefore comes to the conclusion that the provision in the revised statutes is *inoperative* as it respects judgments rendered previous to 3d April, 1821, which, when the revised statutes went into operation, (1st January, 1830,) had already been entered more than 20 years.

On the other hand, *Senator* MAISON holds, in the opinion delivered by him, that the provision in the revised statutes is *operative,* and that the *presumption of payment* attaches to all judgments rendered previous to 3d April, 1821, although at the time when the revised statutes went into operation more than twenty years had elapsed since the entry of such judgments: he denies that the act of 1821 confers any new rights, and considers the revised statutes as merely affecting the *remedy,* and not impairing the *rights* before existing, inasmuch as the statute only gives the *debtor* the benefit of a legal presumption, leaving it to the *creditor* to repel its effect by such facts and circumstances as may exist in the case.

tained the plea of payment, unless the plaintiffs gave evidence to rebut such presumption; and that the jury would be warranted to find that the judgment had been paid and satisfied. The judge decided that the common law presumption of payment, arising from lapse of time, applicable to bonds or other sealed instruments, was not extended to judgments of courts of record until the statute of 3d April, 1821, and therefore declined to charge the jury as requested. The defendant then proved a certificate of the testator, that $251,52, part of the sum mentioned in the condition of the bond, belonged to the mother of the defendant; and he also produced directions in writing from the testator to the sheriff of Onondaga county, dated 5th November, 1806, in which he says, "*on the execution in your hands* in this cause, (entitled in the suit on the bond and warrant) I wish you to proceed, without delay, to sell the defendant's chattel property," and pay $300 of the avails to the mother of the defendant, or suffer her to be a purchaser to that amount. There was no proof that those directions were ever in the hands of the sheriff. In addition to the above the defendant *offered to prove* that on the day of the docketing of the judgment an execution was duly issued thereon to the sheriff of Onondaga, in which county he, the defendant, then resided; that at that time and ever since he has owned and possessed personal property sufficient to pay and satisfy the execution; that he was then and ever since has been the owner of real and personal property, situate in Onondaga, worth several thousand dollars; that the then sheriff of Onondaga had died more than 20 years ago; that the sheriff's family had moved away, and the execution had not been returned by the sheriff: to which evidence thus offered to be given the counsel for the plaintiffs objected as inadmissible, and the objection was sustained. Whereupon the jury, under the charge of the judge, found a verdict for the plaintiffs for the debt and damages. The defendant's counsel having excepted to the decisions of the judge, applied to the supreme court for a new trial, who refused to grant the same, and rendered judgment for the plaintiffs. See opinion of supreme court, 14 Wendell, 190. The defendant sued out a writ of error.

ALBANY,
Dec 1836.

Miller
v.
Smith's Ex'rs.

The case here was argued by

*J. A. Spencer*, for the plaintiff in error.

*D. Buel, jun.* for defendants in error.

*Points submitted on the part of the plaintiff in error.*

I. The question whether the judgment had or had not been paid, was one of fact, and should have been submitted to the jury for their decision. *Jackson* v. *Sackett*, 7 Wendell, 94. 3 Stark. Ev. 1241, 1243. 4 Burr. 1963. 1 Phil. Ev. 119. *Oswald* v. *Leigh*, 1 T. R. 270. *Bailey* v. *Jackson*, 16 Johns. R. 210. *Eldridge* v. *Knot*, Cowper, 214.

II. The testimony offered to be given on the part of the defendant was competent and material, and ought to have been admitted to go to the jury. It would have proved a levy sufficient to satisfy the execution; after which this action cannot be maintained. *Hoyt* v. *Hudson*, 12 Johns. R. 206. *Hotchkiss* v. *McVickar*, id. 403. *Reed* v. *Pruyn*, 7 id. 428. *Ladd* v. *Blunt*, 5 Mass. R. 403.

III. But independent of this evidence, it is insisted that the presumption of payment arising from lapse of time, applies as much and in the same manner, to actions of debt upon judgment, as upon specialties; and that after a lapse of 20 years, it is conclusive in favor of the defendant, unless repelled by other evidence. This is the rule, both by the statute and common law. 2 R. S. 301, § 46. This section is only declaratory of the common law, and applies to all judgments rendered before the 3d of April, 1821, and is intended to be more comprehensive than the act of that session. The reason of the rule is more strikingly applicable to this case than to specialties; for the fact of prosecution shows a determination on the part of the plaintiff to have what belongs to him, and a resort to the best means to compel its speedy payment. It is for this reason that an execution cannot issue after two years (formerly one) without a renewal of the judgment by *scire facias*. *Flower* v. *Bolingbroke*, 1 Strange, 639. *Williams* v. *Gorges*, 1 Campb. 217. *Boardman* v. *De Forrest*, 5 Conn. R. 2. *Willis* v.

*Washington's Adm'r*, 6 Munf. 532. 7 Serg. & Rawle, 416. 14 id. 15. *Executors of Clark* v. *Hopkins*, 7 Johns. R. 556. *Ricard* v. *Williams*, 7 Wheat. 109. 3 Stark. Ev. 1244, note (*M.*) Matth. on Pres. Ev. 375, 378, notes. *Kemys* v. *Ruscomb*, 2 Atk. 45. *Hulke* v. *Pickering*, 2 Barn. & Cress. 555. 9 Com. Law. R. 177. *Comber's case*, 1 P. Wms. 766.

*Points for defendants in error.* I. In an action of debt on a judgment of a court of record of this state, no presumption of payment from lapse of time existed at common law. *Kemys* v. *Ruscomb*, 2 Atk. 45. *Hothershell* v. *Bows*, 6 Modern R. 22. *Moreland* v. *Bennett*, 1 Strange, 652. *Searle* v. *Barrington*, 2 Strange, 826. *Rex* v. *Bows*, 1 Burr. 434. *Winchelsea cases*, 4 id. 1936. *Mayor of Hull* v. *Horner*, 1 Cowper, 109. *Oswald* v. *Leigh*, 1 T. R. 271. 1 Fonb. Eq. 328, 334. *Higgins' case*, 6 Cowen, 45. *Jackson* v. *Pierce*, 10 Johns. R. 414. *Jackson* v. *Wood*, 12 id. 242. *Giles* v. *Baremore*, 5 Johns. Ch. R. 545. *Bailey* v. *Jackson*, 16 Johns. R. 214. *Jenkins* v. *Hopkins*, 9 Pickering, 543. 2 Black. Com. 465. Id. 511. 3 Com. Dig. tit. Debt, A. 2 and A. 4. *Bank of Ogdensburgh* v. *Arnold*, 5 Paige, 42.

II. The doctrine of presumption of payment from lapse of time applicable to sealed instruments, was first extended to judgments of courts of record of this state by statute passed 3d April, 1821. The rule there introduced is not altered by the revised statutes in respect to judgments docketed before those statutes took effect. Laws of 44th Session, (1821,) chap. 238, sec. 4, page, 246. 2 Revised Statutes, 301, part 3, ch. 4, tit. 2, art. 1, sec. 46, 47. Reviser's Reports and Notes to part 3, ch. 4, page 19. (Section reported as § 48 was enacted as § 46.) *Dash* v. *Van Kleeck*, 7 Johns. R. 477. *Sayer* v. *Wisner*, 8 Wendell, 661. *People* v. *Supervisors of Columbia*, 10 id. 63. *Van Rensselaer* v. *Livingston*, 12 id. 491.

III. The evidence which was offered at the trial by the defendant in the court below, and excluded by the circuit judge was properly excluded. *Jackson* v. *Frier*, 16 Johns. R. 193. *Chamberlain* v. *Gorham*, 20 id. 144. *Schermer-*.

*horn* v. *Schermerhorn,* 1 Wendell, 119. 1 Vol. (3d part) Starkie's Ev. 389, *et seq. Jackson* v. *Hotchkiss,* 6 Cowen, 401.

IV. The verdict is right upon the whole of the facts of the case appearing on the record. 2 Archbold's Practice. 252. *Alexander* v. *Barker,* 2 Tyrwytts (Exr.) R. 140. S. C. Crompton and Jarvis, 133. *Crary* v. *Sprague,* 12 Wendell, 41.

The following opinions were delivered :

By the CHANCELLOR. I think the learned judge who delivered the opinion of the supreme court in this cause has mistaken the legal operation as well as the intent of the framers of the act of April, 1821, to amend the act concerning judgments and executions. Sess. Laws of 1821, p. 246. Previous to that act, I believe it was the general understanding of the profession in this state, that judgments stood upon the same footing, in respect to the presumption of payment, as bonds and mortgages, covenants for the payment of rents, and other specialties. Such at least was my understanding of the law. I have in one or two instances acted upon that supposition at the circuit, in cases where the twenty years had expired before the passage of that act ; and have required the plaintiff to introduce some proof to rebut the presumption of payment. Although there does not appear to be any reported case in the English courts, where the question has arisen and been decided upon a plea of payment in an action of debt or a *scire facias,* the principle upon which the courts proceeded in allowing the *scire facias* to be issued after the expiration of twenty years, was a distinct recognition of the general rule as applicable to judgments as well as other debts. This practice was probably adopted before the statute of Ann, usually called the act for the amendment of the law, and which first allowed the plea of payment to be pleaded to a writ of *scire facias,* and to an action of debt on judgment. To authorize the issuing of a *scire facias* to revive a judgment of twenty years' standing, the plaintiff was not only required to file an affidavit that the debt was still due, and the judgment

unsatisfied, but he was also obliged to serve the defendant with a rule to show cause why the *scire facias* should not issue, to enable the latter to deny the truth of the allegation that the debt was still due. 2 Tidd's Pr. 9th Lond. ed. 1105. 2 Supp. to id. 89. *Bank of New-York* v. *Eden*, 17 Johns. R. 107. The issuing of the *scire facias* also was a matter of right, upon the usual affidavit and motion if the twenty years had not expired ; but after that time it was entirely within the discretion of the court. Even after the statute of Ann had authorized the plea of payment on a *scire facias*, the court would not permit the writ to be issued after the lapse of twenty years upon any other terms than that it should be actually served upon the defendant, or that he should have notice thereof personally, to enable him to make his defence. *Coysgarne* v. *Fly*, 2 W. Black. R. 995. All these practical regulations show that the courts were acting upon the presumption that a judgment debt, as well as debts of every other description, had been paid, after the lapse of twenty years, unless the creditor could show something to the contrary thereof to take the case out of the general rule. The case of *Flower* v. *The Earl of Bolingbroke*, 2 Strange, 639, although not fully reported, contains sufficient to show that the court went upon the presumption that a judgment was satisfied after the lapse of twenty years, and the court, therefore, refused to let the judgment record be filed *nunc pro tunc* after that time ; the defendant being then dead, and a creditor's bill having been filed to administer his assets. The decision of Lord Ellenborough, in 1808, 1 Camp. 217, although but a *nisi prius* decision, shows that the understanding of the English judges at that time was, that the general rule of presumption applied to judgments as well as to other debts. It may also be proper to add, that in a recent case in Ireland, where a statutory provision on this subject has existed for more than one hundred years, Mr. Justice Burton distinctly admits the existence of the common law rule of presumption that a judgment has been paid after the lapse of twenty years, independent of the statute. *Dunn's Executor* v. *Heir of Currin*, Alcock and Napier's R. 403. And

ALBANY,
Dec. 1836.

Miller
v.
Smith's Ex'rs.

if we look at the dicta of judges, and to the judicial decisions of our sister states where the common law rules of presumption prevail, we shall find abundant evidence to satisfy us that this principle of the common law is universally understood to apply to judgment debts as well as others. Indeed, I have not been able to find a single case, or even a dictum of a judge, in which any distinction is made between judgment debts and others, except in the case now under consideration. This precise question has been discussed, and the principle of presumption of payment distinctly recognized, in the decisions of the courts of Connecticut, New-Jersey, Pennsylvania, and South-Carolina. See *Boardman* v. *De Forrest*, 5 Conn. R. 1 ; *Buchanan* v. *Rowland*, 2 South Caro. R. 721 ; *Cope* v. *Humphreys*, 14 Serg. & Rawle, 15 ; *Kennedy* v. *Denoon*, 2 Tred. South Car. R. 617 ; and *Cohen's Adm'r* v. *Thomson's Ex'rs*, 2 Mills Const. R. 146. And this rule of presumption is recognized as applying to all debts indiscriminately by the courts of several other states, as well as by the supreme court of the United States.

It remains for me to consider the object and intent of the statutory provision on this subject in the act of April, 1821, and its legal effect on the case now before us. By referring to that act it will be found that its general object and intent was to prolong rather than to diminish or shorten the time for which the liens of judgments should continue. The act limiting the lien of judgments to ten years was passed the 9th April, 1811 ; and the liens of judgments which had been entered previous to that time would, therefore, have been extinguished within six days after the passage of the act of 1821. At that time there were many judgment creditors who had not taken the necessary steps to preserve their liens, by a sale of the property within the time prescribed ; and this act was passed at their solicitation upon the last day of the session of the legislature, for the purpose of extending their liens until they could revive their judgments, and consummate such liens by a sale upon execution. The last section which relates to the presumption of payment of judgments, must have been introduced

for the purpose of enlarging the period of presumption, with a view perhaps to preserve the lien of some judgments which were already of twenty years' standing, and to prevent the necessity of obtaining evidence to rebut the presumption arising from lapse of time. It was probably passed through the legislature, in the hurry of business at the close of a session, without sufficiently considering its practical effect upon the rights of those in whose favor such presumption of payment already existed. That it could have the effect to revive a judgment which was already presumed to be satisfied, I do not believe, as it would not be treating the legislature with proper respect to presume they intended to destroy rights which were already vested. But in relation to those judgments which were of less than twenty years' standing, the legislature had the same power to extend the time within which the presumption would attach as they had to extend the liens of judgments which had not then actually expired, or as they had to diminish the time of the continuance of the liens of judgments already existing, at the time of the passing of the act of 1811 on that subject. The judgment against the plaintiff in error being then a valid and subsisting debt, so far as related to a presumption of payment, it having been entered less than sixteen years before the passing of the act, it was competent for the legislature to extend the time within which the plaintiff should proceed upon his judgment, or be barred of his claim by a legal presumption of payment; and as this judgment had more than four years to run at the time of the passage of the act of April, 1821, the effect of that act would be to enlarge the time of presumption, as to these parties, until 1841, if no subsequent legislation was had on the subject. But as it was competent for the legislature to enlarge the time of presumption, which time was in the nature of a statute of limitations, it was also competent to diminish it afterwards, provided they gave the plaintiff a reasonable time to collect his judgment before the statutory bar or legal presumption was permitted to run against him. It was not competent, however, for the legislature by stat-

ALBANY,
Dec. 1836.

Miller
v.
Smith's Ex'rs.

ute to declare that the presumption of payment should apply to this judgment at the end of twenty years from the time it was entered, when the twenty years had, in fact, expired at the time such statute was passed : for that would not be an act for the limitation of the action on the judgment, but an act to bar any suit from being brought thereon at any time. In other words, it would destroy the remedy for the recovery of the debt altogether, instead of limiting the time within which the suit should be prosecuted. The pro- vision of the revised statutes, restoring the common law rule of presumption of payment, was for this reason *inoperative* as to all those judgments which had not been barred by lapse of time at the passage of the act of April, 1821, but which had lain dormant more than twenty years when the revised statutes were adopted ; and the time of legal presumption as to them must still be regulated by the provisions of the act of 1821. The circuit judge was, therefore, right in refusing to instruct the jury that they might presume the judgment paid from the mere lapse of time.

As between the plaintiff and defendant in the judgment, a levy upon property by execution is no discharge of the judgment, provided the goods are afterwards relinquished by the sheriff, and given up to the defendant in the execution, with the consent of the plaintiff. And a levy upon goods sufficient to satisfy the execution in part only, even if the goods are retained by the sheriff, is only a bar to a suit of scire facias upon the judgment *pro tanto*, and cannot be pleaded in bar of the whole debt. *Peoploe* v. *Gallins*, 4 J. B. Moore, 163. *Ford* v. *Skinner*, 4 Ham. Ohio Rep. 383. I am inclined to think, however, that a levy upon personal property sufficient to satisfy the execution, even if it is afterwards delivered up to the defendant, ought to have the effect of discharging the real estate from the lien of the judgment so far as concerns the rights of bona fide purchasers and mortgagees or subsequent judgment creditors, whose rights had become vested before the restoration of the goods to the defendant. In such a case the lien of the judgment is certainly suspended while the goods

levied on are in the custody of the officer; and after the restoration of the goods to the defendant, the lien of the judgment ought not to relate back so as to overreach the conveyances or liens of those who have acquired vested rights in the mean time. *Jackson* v. *Benedict*, 13 Johns. R. 534. A mere levy on the goods in this case could not therefore be given in evidence, even under a proper notice, in bar of the action, if the goods were in fact left in the possession of the defendant, and subsequently used by him.

I think, however, the evidence offered by the defendant ought to have been received, in connection with the great length of time which had elapsed, and the other facts in the cause; and that such evidence, unexplained, might have authorized the jury to find the judgment had been collected by the sheriff or paid by the defendant, either wholly or at least to the amount which it appears belonged to the mother of the defendant. If the defendant had real and personal property enough in his possession to satisfy the execution, it was the duty of the sheriff to seize upon and sell that property to raise the amount of the debt. And as it would be a breach of duty and a violation of his oath of office for the sheriff not to do so, I am inclined to think that after such a lapse of time a jury might presume he had done his duty in this respect, unless some explanation was given. The fact that the plaintiff was an executor, whose duty it was to have collected the debt long since if he believed it to be actually due, should also have some influence upon the minds of the jury, upon the question of payment. On the whole, I think if the evidence offered had been given, it would have presented a proper subject for the decision of the jury; and if they had found a verdict for the defendant, no injustice would probably have been done.

My opinion therefore is that this judgment should be reversed, and a *venire de novo* awarded.

By *Senator* MAISON. It has been repeatedly decided that payment of a *bond* of 18 or 20 years standing will be presumed, where no interest has been paid within that pe

ALBANY,
Dec. 1836.

Miller
v.
Smith's Ex'rs.

riod. This presumption, however, may be repelled by circumstances explaining satisfactorily why an earlier demand has not been made. *Searle* v. *Barrington*, 2 Str. R. 826. *Rex* v. *Stephens*, 1 Burr. 433. *Oswald* v. *Leigh*, 1 T. R. 271. *Clark* v. *Hopkins*, 7 Johns. R. 556. *Bailey* v. *Jackson*, 16 Johns. R. 214, and the cases there cited. The court has refused to permit a judgment to be entered up on a bond and warrant of attorney, where the warrant was more than 20 years old, without an affidavit stating facts which would rebut the presumption of payment. *Hulke* v. *Pickering*, 9 Com. Law Rep. 177, 362. 2 Barn. & Cress. 555. And so it has been repeatedly decided that a *mortgage* will be presumed to have been paid, where it has been suffered to lay dormant for 20 years, open to explanation however, as in the case of a bond. *Giles* v. *Baremore*, 5 Johns. Ch. R. 552. *Jackson* v. *Pierce*, 10 Johns. R. 414. *Bailey* v. *Jackson*, 16 Johns. R. 214. There are but few decisions to be found in regard to *judgments*, whether they also shall be presumed to have been paid or satisfied by a lapse of 20 years or more, and I presume for the reason that the profession generally have considered judgments upon the same footing with bonds and mortgages, and subject to the same presumption of payment; and consequently the question as to judgments has been very seldom agitated in our courts. I have not been able to meet with a single case except the present, nor even the *dictum* of a judge declaring that judgments are *not* subject to the same rules of presumption as mortgages or bonds; but there are cases which regard judgments as subject to the same rules.

In *Kemys* v. *Ruscomb*, 2 Atk. 45, a bill was filed against the representatives of a judgment creditor, for entering satisfaction on the judgment, as it had been standing 42 years, and presumed to be paid by lapse of time. Lord Chancellor Hardwicke, so far from holding that judgments could stand forever in force against the defendant, or that they should not be presumed to be paid after a lapse of time, directly intimates to the contrary. He dismissed the bill with costs, and said, " where judgment is still standing

out and there is no satisfaction entered upon record, *this* court will not, merely upon the presumption from length of time, decree it to be satisfied, *especially* where the statute for the amendment of the law, 4 Ann. c. 16. s. 12, allows payment to be pleaded at law, as it is an old judgment :" so that, as at law payment could in such case be pleaded, and presumed after a lapse of time, it being an old judgment, he left the party to his remedy in the law court. In *Williams* v. *Gorges*, 1 Camp. R. 217, an issue was sent out of chancery to try whether there was any thing due upon a judgment entered up of Hilary term, 1769, to secure the payment of an annuity on which nothing had been paid within 20 years; circumstances were given in evidence to rebut the presumption of satisfaction from lapse of time, but Lord Ellenborough considered them insufficient for that purpose, and so charged the jury, and directed them " to presume that the judgment had been discharged ¸by being paid off or released." At law and in equity, therefore, in England, presumption of payment of a judgment from lapse of time has been sanctioned; but the least number of years standing, or dormancy, which will justify such presumption, I do not find as having been expressly adjudged there. It has, however, been settled in the supreme court of errors of the state of Connecticut, in *Boardman* v. *De Forest*, 5 Conn. Rep. 1, that forbearance of a judgment debt for *twenty years*, unexplained, raises a presumption of payment. In that case also various circumstances were given in evidence with a view of rebutting the presumption of payment: such as insolvency of the defendant, absence from the state, part payment, &c. The chief justice charged the jury, that a judgment debt suffered to lie dormant for 20 years may be presumed to have been satisfied from so long forbearance, if unexplained by facts which destroy the reason of the rule, and that the rule is founded on this principle; that a man will naturally enjoy what belongs to him, if not prevented by some impediment; and instructed them that if they should find that there had been a forbearance of the debt in question for twenty years without any explanation, they ought to infer a satisfaction

.of the judgment. Exceptions were taken on this, as on other points in the case. The counsel, on the trial, did not insist that no presumption of payment of the judgment could be raised by a lapse of 20 years, but rather conceded the proposition, as they contended "that twenty years had not elapsed, and that the debt was not paid." The cause was argued by able counsel before the supreme court of errors, and it was not even intimated that a judgment of 20 years standing would not be presumed to have been paid. Chief Justice Hosmer, with the assent of three of his associates, held that "the general principle stated to the jury, that a debt may be presumed to have been satisfied when suffered to lie dormant for twenty years, if the forbearance is unexplained by facts which destroy the reason of the rule, was unexceptionable." Such also has been understood to be the law in other states and in a variety of cases. 14 Serg. & Rawle, 15. *Kennedy* v. *Denoon*, 2 Constitutional Rep. of S. Carolina, 617. *Cohens* v. *Thompson*, 2 id. 146. *Buchanan* v. *Rowland*, 2 Southard's N. J. Rep. 721. See also *Lesly* v. *Nones*, 7 Serg. & Rawle, 410. The case of *Boardman* v. *De Forrest* is a strong case to the point, and is to my mind satisfactory; and why should it not be? A bond or a mortgage is given most generally for a debt created at the time. A reasonable time is always expected and generally allowed after the debt is due, for the debtor to make payment; and yet do the twenty years commence running from the day the debt becomes due. But in the case of a judgment, the evidence is furnished that the party will wait no longer; that the debtor had worn out the patience of the creditor by delaying payment, or the creditor, doubting the future responsibility of the debtor, prosecutes him to judgment. Whatever may have been the motive of the creditor in obtaining judgment, it is not to be believed that he would suffer that judgment to remain unsatisfied for twenty years, without receiving at least a part payment, without issuing execution or adopting some measure to compel the collection of the money. It is against all natural and ordinary expectation, and must stagger the belief of the most credu-

lous. What is there about a judgment of such peculiar solemnity and importance that no presumption can be raised as to its payment? Is it because it is a matter of record? How then has such presumption obtained as to a mortgage? That is also a matter of record. Does not all experience teach us that a mortgage paid off is always and almost immediately cancelled of record, and a hundred satisfied judgments never cancelled at all? The presumption, therefore, is infinitely stronger that a stale judgment of twenty years' standing has been fully paid and satisfied, but by the too common negligence of the judgment debtor omitted to have been cancelled, than that a mortgage satisfied would remain that length of time on record uncancelled. The judgment in the case at bar had been standing nearly twenty seven years and a half before the action was brought upon it; and no fact or circumstance has been shown to rebut the presumption of payment. It would be startling to the common sense of this community to hold that such a judgment, unexplained, can be enforced in any court of law or equity.

The judgment sued upon was docketed in August 1805, and the statute of the 44th session, Laws of 1821, c. 238, § 4, is referred to as redeeming this judgment from the presumption of payment by the lapse of 20 years; or rather, that having then lain dormant 16 years, it had by that act a prolonged existence of 21 years more; so that this judgment, in fact, has a legal vitality and can be enforced for 36 years from the time it was docketed. Two generations, according to modern computation, will have passed away, before there is an end of the power of this judgment. I have no doubt that this act was intended to be declaratory of the common law. It cannot be supposed that the legislature, by the passing of that act, intended to have it understood, that before then the common law was, that there could be no presumption of payment of a judgment which had stood uncancelled for 20 or 50 or 100 or 1000 years. Such a supposition would be too absurd and ridiculous, to be for a moment seriously entertained. The act of 3d April, 1821, declaring that the presumption of payment shall apply to all judgments

theretofore rendered in any court of record in this state, after twenty years from the passing of that act, confers upon no one a vested right.  No rights are conferred or withheld ; the act merely regulates and defines the rule of evidence, relating to presumption of payment of judgments. Had the plaintiffs in this suit commenced their action after the passing of this act, and before the revised statutes went into operation, clearly, they could have availed themselves of the rule of evidence as declared by the act of 1821 ; but they delayed bringing their suit until the revised statutes became operative, and by those statutes it is declared, 2 R. S. 301, § 46, that " the presumption of payment shall apply to all judgments of a court of record of this state rendered before the 3d day of April, 1821, and to all such judgments rendered before this chapter shall take effect as a law, in the same manner as such presumption applies to sealed instruments."  The plaintiffs are bound by it.  This statute altered the rule of evidence as to presumption of payment, from that which was declared by the act of 1821, and restored the common law rule of presumption of payment, after twenty years from the docketing of the judgment.

Evidence and remedy are clearly different and distinct from vested rights.  With vested rights the legislature cannot constitutionally interfere, except in the case of taking private property for public use, and then only upon rendering just compensation ; but the remedies by which rights are to be enforced, and the evidence by which they are to be established, are clearly within the control of the legislature.  Our statutes of limitations are declaratory of certain circumstances, which shall amount to evidence that the contract has been performed, and they have immediate relation to the remedies which are furnished in the courts.  Who has ever questioned the constitutionality of those laws, although they go to the extent of prohibiting the party from recovering the demand for which he prosecutes ?  Much less can objection be reasonably urged against the revised statutes on the subject under consideration, as they go to the extent only of declaring, that payment may be presumed, leaving it to the party to produce

evidence of such circumstances will rebut that presumption. It has been solemnly adjudged in several of the states, and it has been repeatedly decided in this, that foreign statutes of limitations are in no case available here, our own statutes being applicable to all actions prosecuted in our courts. *Decouche* v. *Savetier*, 3 Johns. Ch. R. 97. *Nash* v. *Tupper*, 1 Caines' R. 102. *Ruggles* v. *Keeler*, 3 Johns. R. 263. *Medbury* v. *Hopkins*, 3 Conn. R. N. S. 472. *Harper* v. *Hampton*, 1 Har. & Johns. R. 453 ; S. C. 622. *Pearsall* v. *Dwight*, 2 Mass. R. 84. *Byrne* v. *Crowninshield*, 17 id. 55. The rules of evidence, therefore, form no part of the contract. Chief Justice Parker says, in *Blanchard* v. *Russell*, 12 Mass. R. 1, " A law, which is in force when the contract is made, cannot be said to have that effect [of impairing the obligation of a contract,] for the contract being made under the law, is presumed to be made in reference to it, and the parties are legally conusant of it at the time. The contract in such case is not impaired by the law, for the law is a part of the contract." I am aware that a judgment is no contract, nor is it to be considered in the light of a contract, for *judicium redditur in invitum*, yet the same principle must be extended to judgments. The party taking his judgment, takes it subject to the existing rules for enforcing it, which are liable to such variations and modifications as the legislature shall see fit to make. If, at the time of the judgment, the plaintiff had a remedy to coerce the collection by imprisoning the body of the debtor, he took it subject to the legislative right or power of declaring, that he should not have the remedy by imprisoning the debtor. It was in the exercise of a constitutional prerogative, that the legislature, in 1831, abolished imprisonment for debt, not only for debts thereafter to be created, but for debts then due and existing. They did not impair the obligation, they interfered with no vested right, but modified and controlled the remedy. Imprisonment, says Chief Justice Marshall, in *Sturges* v. *Crowninshield*, 4 Wheat. 201, is no part of the contract. Simply to release the prisoner does not impair its obligation. It has been repeatedly determined in our courts,

<div style="text-align: right">

Miller
v.
Smith's Ex'rs.

</div>

before the act abolishing imprisonment for debt, that an insolvent discharge of the person relates merely to the remedy, and if granted in another state or in a foreign country, it will not under circumstances, or at any stage of the cause, be noticed by our courts or allowed to operate for any purpose. *White* v. *Canfield*, 7 Johns. R. 117. *Sicard* v. *Whale*, 11 id. 194. *Peck* v. *Hoshier*, 14 id. 346. *Whittemore* v. *Adams*, 2 Cowen, 626. The rules of law, therefore, declaring the remedy, form no part of the contract. So before the 9th April, 1811, a judgment was a *lien* on the land of the debtor, for a term co-equal with the judgment, against *bona fide* purchasers or subsequent incumbrances by mortgage, judgment or otherwise; yet did the legislature, on that day, declare that no judgment *theretofore* rendered should be or remain a lien on any real estate, or in any manner incumber the same, against *bona fide* purchasers, &c. for any longer time than ten years from and after the passing of the act. A judgment, therefore, rendered the day before, which was then a lien during the life of the judgment, was limited to ten years only. This impaired no vested rights; it only declared or modified the remedy. When this judgment was taken in 1805, if there be vested rights in rules of evidence, it was taken subject to the rule of evidence that the law would presume it to be paid, if suffered to remain dormant, unexplained, for twenty years; and the defendant had a right to insist upon its application, if it should ever become necessary for him to do so. As well may it be said that the act of 1821 impaired the defendant's vested right, to have applied the law of presumption of payment after 20 years' dormancy, holding him subject to its power 12 years longer than was permitted when the judgment was taken—as that the plaintiffs' vested rights were impaired or affected by the revised statutes, which declared such presumption should prevail after twenty years from the entry of the judgment. And so may the plaintiffs, with equal plausibility, insist that the law of 1811 was an invasion of their vested rights, because it shortened the period of the lien of their judgment on the defendant's lands, as against subsequent liens, &c. There are no vested rights in existing rules of evidence, or

remedies for the collection of debts or demands; they are at all times within the control of the legislature, to be by them varied or modified as they shall see fit. The rights of the plaintiffs remain unimpared, but the remedy and the evidence must be controlled by the law, as it is at the time they seek to enforce their rights. In this view of the law, the suit cannot be maintained, unless the plaintiffs produce satisfactory evidence, in excuse of their delay in prosecuting on this judgment for nearly twenty-seven years and a half; the presumption is that it has been paid, and the onus probandi is upon the plaintiffs to show otherwise. The circuit judge was requested to charge the jury, that they would be at liberty, and would, from lapse of time, have the right to find, that the judgment had been paid and satisfied, and that the presumption of payment, arising from such lapse of time, sustained the plea of payment, unless the plaintiffs gave evidence to rebut such presumption. The judge refused so to charge the jury, and decided that the common law presumption of payment, arising from lapse of time, applicable to bonds and other sealed instruments, was not extended to judgments of courts of record, until the statute of 3d April, 1821: to all of which the defendant took exceptions, and which, in my judgment, are well taken.

Under the plea of payment, lapse of time may be given in evidence. *Moreland* v. *Bennett*, 1 Str. 652. *Searle* v. *Barrington*, 2 ib. 826. *Wells* v. *Washington*, 6 Munf. 532. *Jackson* v. *Sackett*, 7 Wendell, 98. And it is for the jury, not the court, to pass upon the evidence of payment by presumption; payment or non-payment is a question of fact, not of law. *Oswald* v. *Leigh*, 1 T. R. 271. *The Mayor of Hull* v. *Horner*, 1 Cowp. 109. *Willaume* v. *Gorges*, 1 Campb. 217. *Bailey* v. *Jackson*, 16 Johns. R. 210. *Giles* v. *Baremore*, 5 Johns. Ch. R. 558. In *Jackson* v. *Sackett*, 7 Wendell, 100, Mr. Justice Sutherland, in delivering the opinion of the court, said, " the presumption arising from lapse of time is but evidence to the jury, from which they may infer that the debt has been satisfied. Where it is entirely unexplained, they ought to draw that conclusion. But there is always something in the condition and relation of

ALBANY,
Dec 1836.

Miller
v.
Smith's Exr's.

the parties in the various circumstances, which of necessity attend these and other business operations, which may fairly be taken into consideration by the jury, and render it proper that the questions should be submitted to them, under such directions from the court as they may think called for by the circumstances of the case. And such is the general language of the authorities upon this subject."

If, however, the act of 1821 was legal and operative, in prolonging the existence of this judgment, and the revised statutes are to be deemed unconstitutional as far forth as they affect the plaintiffs in this suit, still the circuit judge erred in rejecting the evidence offered by the defendant, which had for its tendency to satisfy the jury that this judgment had been paid. Admitting this judgment to have been recovered in 1821, after the passing of the act, the judgment at the commencement of this suit had lain dormant for twelve years. According to the act of 1821, payment, by reason of that lapse of time, will not be presumed; but is the defendant, therefore, precluded from giving evidence, that the judgment had been paid and satisfied; and if he could not give direct and positive proof of payment, can he not be permitted to give evidence, from which a jury may be well justified in *presuming* that payment had been made. It would certainly be very extraordinary, if he could not. I know of no statute annulling or annihilating the common law doctrine of presumption. Justice Woodworth, in *Hartwell* v. *Root*, 19 Johns. R. 347, said, " the general rule is, that when a person is required to do a certain act, the omission of which would make him guilty of a culpable neglect of duty, it ought to be intended, that he has duly performed it, unless the contrary be shown. 3 East, 192. 10 id. 216. Phil. Ev. 151. In that case, it is true, the principal point decided was, that a sheriff was not bound at his peril to have proof of a levy in a case like that, where the person, who must be presumed to have done his duty, is sued, and cannot be heard as a witness. But it has been held that such presumption can be legally raised, where the sheriff is not a defendant, and where for aught that appears he might have been called as a witness. In the case of

*Jackson* v. *Shaffer*, 11 Johns. R. 517, where the sheriff had sold land, and executed a deed, the defendant contended, that the sale was void, because it was not shown that there was a previous levy. The court said, " It no where appears there has not been a levy," and that if it were necessary, they would, under the circumstances of the case, presume it to have been made. The offer, here, was to make proof not only of such circumstances, as would justify a jury in presuming that a levy had in fact been made, to wit, the letter of the plaintiff in the judgment whom the plaintiffs here represent to the sheriff, expressly admitting that execution was issued, and in the sheriff's hands ; but also that an execution was duly issued on the judgment to the sheriff. Clearly this proof should have gone to the jury, and if they would have been satisfied, that an execution had been issued, then, not only does the letter before referred to by plain and necessary inference show that a levy had been made, but such is the inference and judgment of law, as before seen. If a levy had been made, then the evidence, that the defendant had abundant property to satisfy the execution should have been given to the jury, that they might thereby be enabled to form an opinion, whether the levy had been made on property sufficient to satisfy the execution ; and if satisfied of such levy, they would have been justified in finding a verdict for the defendant ; for a levy on goods sufficient to satisfy the execution, extinguishes the judgment. *Ex parte Lawrence*, 4 Cowen, 417. *Jackson* v. *Merritt*, 7 id. 13. " This principle," say the supreme court, in *Hoyt* v. *Hudson*, " is well settled." 12 Johns. R. 208. In the case of *Clark* v. *Withers*, 2 Ld. Raym. 1072, 1 Salk. 322, it was ruled that where a defendant's goods are seized on a *fi. fa.*, the defendant is discharged, and in the case of *Ladd* v. *Blunt*, 4 Mass. R. 403, it is expressly decided, that when goods sufficient to satisfy an execution are seized on a *fi. fa.*, the debtor is discharged, even if the sheriff waste the goods, or misapply the money. It is well remarked by Phillipps, in his treatise on Evidence, upon the authority of 2 H. Black. 297, that " if the circumstantial evidence be such, as may afford a fair and reasonable pre-

sumption of the facts to be tried, it is to be received and left to the consideration of the jury, to whom alone it belongs to determine upon the precise force and effect of the circumstances proved, and whether they are sufficiently satisfactory and convincing to warrant them in finding the fact in issue."

I am of opinion the judgment of the supreme court, sanctioning the proceedings at the circuit, and rendering judgment on the verdict, should be reversed.

On the question being put, *Shall this judgment be reversed?* all the members of the court, with the exception of two, twenty-four present, voted in the *affirmative.*

Whereupon the judgment of the supreme court was *reversed,* and a *venire de novo* ordered.